strategy across many years and many other parties is not relevant to any claim or defense, especially where Adobe is not even a party to this action. *Id.* Ex. P.

- Information on an unspecified "Omniture reporting product, which all of the named defendants still in the suit (REI, Dillard's, JCPenney, Staples and HSN) use," Chanin Decl. Ex. O, despite the fact that (i) this request is not actually within the deposition subpoena because the subpoena expressly defines "DEFENDANT" or "DEFENDANTS" as only including REI; (ii) Optimize has never explained why this irrelevant information would not be obtained from these other parties to the case without burdening non-party Adobe, (iii) the requested information is, as confirmed by Optimize's request itself, not relevant to the Recommendations product at issue in this case.

- Irrelevant and privileged information about Adobe's relationship with REI, specifically "(i) any indemnification requests, responses, demands, denials or discussions related to the present lawsuit or the claims being asserted by Optimize and (ii) Adobe's pre-suit knowledge of the '592 Patent and Optimize (fka SBJ IP Holdings 1, LLC)." Chanin Decl. Ex. O. But as Adobe has explained, not only is the requested information privileged, but it is also irrelevant. For instance, Adobe's "pre-suit knowledge of the '592 Patent and Optimize (fka SBJ IP Holdings 1, LLC)" could not possible be relevant when Adobe is not even a party. *Id.* Ex. P.

- An additional new demand (also not covered by the Deposition Subpoena) for a witness to testify on the authenticity of documents. Chanin Decl. Ex. O. While this information was not within the scope of the Deposition Subpoena, Adobe offered to provide a written stipulation on the authenticity of certain documents but there is no reason a witness should be burdened on this issue. *Id.* Ex. P.

## III. ARGUMENT

Adobe moves to quash and moves for a protective order against further requests from Optimize related to its pending litigation. Adobe has spent considerable resources in response to

Optimize's unreasonable positions, morphing follow-ups, and burdensome discovery requests. Optimize continues without waiver to inflict undue burden, which drives Adobe's motion for relief.

### A. Adobe Seeks A Protective Order Regarding Optimize's July 2013 Document Subpoena

#### 1. Adobe Seeks Relief From Optimize's Requests For Source Code Of Non-Accused Products

This is not a case where a third-party did not provide the relevant materials in compliance with a subpoena. Quite the opposite. Not only did Adobe provide technical documentation on the allegedly accused technology, Adobe also located a complete snapshot of the *source code* for the Recommendations product, which is used by one of the five defendants (Defendant REI, Inc.), and then made it available to Optimize for inspection. Chanin Decl. ¶ 8.

Now Optimize wants the source code for non-accused products and/or functionality, including source code – including publicly available code – that the Recommendations code happens to reference, irrespective of whether it is part of the actual Recommendations code. Optimize is not entitled to technical materials, particularly highly proprietary source code, beyond the alleged accused technology Recommendations at issue in its litigation. *Medtronic MiniMed, Inc. v. Animas Corp., et al.*, C 13-80294, 2014 WL 308952, *2 (N.D. Cal. January 27, 2014) (quashing in its entirety a subpoena request directed at non-accused products). This would be true for any party in a patent case, and is certainly true here where Optimize seeks source code in a fishing expedition with a third-party. At this point, Adobe has more than complied with Optimize's Document Subpoena, and requests relief from Optimize's expansive attempts at further source code, in the form of a protective order or an order quashing Optimize's requests directed at non-Recommendations code. *See, e.g.*, Fed. R. Civ. Proc. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ... limiting the scope of disclosure or discovery to certain matters . . .").

#### 2. Adobe Similarly Seeks Relief From Optimize's Fishing Expedition For Technical Documents That Might Mention "Recommendations"

Adobe produced the core technical documentation for the Recommendations products, including the documents that summarize, instruct, and explain how the Recommendations

functionality works. Chanin Decl. ¶ 5. If that were not enough, as explained above, Adobe also made available a complete set of the source code for the Recommendations product, and gave Optimize's expert access to it. *Id.* ¶ 8. As Adobe has repeatedly confirmed to Optimize in meet and confer correspondence, "the source code itself would be what Adobe uses to provide an internal overview of how the product works." Chanin Decl. Ex. I, at p. 3. As in all patent cases (and especially with respect to third-party discovery), the source code is ultimately the most accurate evidence for showing how the accused product actually works, and is often the central documentation used regarding alleged infringement or non-infringement. Optimize has had access to it, along with all the other core documentation on the technical features for the Recommendations product, which allegedly employed by one of the five defendants, namely REI, Inc. Nevertheless, with its never ending requests, Optimize continues to harass Adobe with requests that essentially try to seek any materials that mention or somehow relate to the Recommendations technology. Adobe has tried to work with Optimize, and for example, even investigated the feasibility of searching for internal "wiki" entries that would show how Recommendations operates. Chanin Decl. ¶ 13 & Ex. I. Adobe confirmed for Optimize that, as expected, Adobe found that no internal "wiki" entries provide an overview of the technical design of the Recommendations product. *See supra* n. 5 (citing Chanin Decl. Ex. I, at p. 4 ) & Chanin Decl. ¶ 13.

At this time, Adobe has more than complied with Optimize's subpoena for technical materials and now seeks relief from Optimize's ever-expanding, morphing requests that harass Adobe for any document that in any way relates to the Recommendations technology. *See, e.g.,* Fed. R. Civ. Proc. 45(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."). With its never-ending requests and its demand for Adobe to continue its fishing expeditions, Optimize is abusing the subpoena power entrusted by the judicial system. *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1074-75 (9th Cir. 2004) ("The subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused.").

3. **The Court Should Preclude Optimize's Demands For REI Related Documents As Duplicative And Unduly Burdensome**

Instead of working through its discovery disputes with Defendant REI in its own litigation, Optimize threatens to move to compel against third-party Adobe on the production of REI related documents that are either duplicative or not reasonably accessible.

First, Optimize improperly seeks duplicative metrics and pricing information from Adobe regarding services provided to REI beyond Recommendations so that it can check the "reliability" of Defendant REI's production. For example, Optimize demands that Adobe produce billing and pricing information relating to what Defendant REI paid Adobe, so that Adobe's production can act a "check against what has been produced by REI". Chanin Decl. Ex. J. In short, Optimize wants to burden Adobe to search and review hundreds of invoices to determine whether they are relevant, even though the relevant information could be (or may have already been) obtained directly from REI, a party to the case. The Court should quash this request. *See Miller v. Ghirardelli Chocolate Co.*, C 12-4936, 2013 WL 6774072, *4 (N.D. Cal. Dec. 20, 2013) (quashing subpoena request seeking pricing information from a third-party where party had ability to access information by other means); *Rocky Mountain Medical Management, LLC v. LHP Hosp. Group, Inc.*, No. No. 4:13–cv–00064–EJL, 2013 WL 6446704, at *4 (D. Idaho Dec. 9, 2013) ("A court may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation.") (collecting cases).

What's more, Optimize outdoes itself when it requests that Adobe provide an export all REI.com data available. Chanin Decl. Ex. E. Optimize's unreasonably broad request of an export for all REI.com data should be quashed as a matter of law. *Medtronic MiniMed, Inc. v. Animas Corp., et al.*, C 13-80294, 2014 WL 308952, *2 (N.D. Cal. January 27, 2014) (quashing subpoena requests in their entirety based on the party's failure "to issue narrowly-tailored requests" to a third-party). Any REI specific evidence Optimize seeks can and should be obtained from defendant REI. *Rocky Mountain*, 2013 WL 6446704, at *4. In an effort to compromise, Adobe agreed to investigate the feasibility of gathering the requested REI data, located the data, and offered to produce that data as it is "maintained in the ordinary course of business as database entries

including base64encoded strings," but alerted Optimize to the fact that "[t]he data, as ordinarily kept, is largely not human readable." Chanin Decl. Ex. I. Given that this data is not "reasonably accessible" under the Federal Rules, and Adobe conducted reasonable efforts to search for pertinent and useful data, Adobe moves to quash any further requests and/or for a protective order against Optimize's continued demands for an export of the "REI.com data available".

In sum, Adobe moves this Court to quash these REI related requests in light of their duplicative and overly broad nature. Adobe further requests that this Court grant a protective order precluding further demands and harassment in light of Adobe's showing that REI.com information is not reasonably accessible in a human readable from (even assuming that this information somehow relevant) and in light of Optimize's ability to obtain pricing and metrics information from Defendant REI.

### 4. The Court Should Preclude Optimize's Demands for Documents Related To Non-REI Defendants

One of Optimize's most unreasonable requests on Adobe is the demand for monitoring metrics across all five defendants in its litigation. First, it is undisputed that Adobe does not provide its Recommendations product to any Defendant except REI. But, Optimize seeks monitoring metrics data for non-REI defendants for non-Recommendations products, back as early as 2001. In other words, even though Adobe has told Optimize that only REI is a Recommendations customer, Optimize seeks a host of general monitoring metrics that Adobe or its predecessor Omniture may have related to other defendants. Optimize's request is wholly unreasonable and should be quashed as a matter of law. *Medtronic MiniMed, Inc. v. Animas Corp., et al.*, C 13-80294, 2014 WL 308952, *2 (N.D. Cal. January 27, 2014) (quashing subpoena requests "competitive intelligence documents" as unduly burdensome for a third party). Instead of burdening a third-party with general metric data across the Defendants, Optimize should seek monitoring metrics data from the individual defendants in its own litigation. *Rocky Mountain*, 2013 WL 6446704, at *4. Moreover, as outlined above, Optimize does <u>not</u> contend that the information is relevant to any specific

products or functionality alleged to infringe, and has never explained what information it needs from non-party Adobe that is relevant and cannot be obtained from a party to this case.[7]

### 5. Adobe Moves To Quash And/Or For A Protective Order Against Any Remaining Document Requests

Adobe has been willing to work with Optimize to produce a set of pertinent technical documents and a complete set of the source code for the Recommendations product, used by REI. Further, as discussed above, Adobe conducted a reasonable investigation into other requests, but at this point, Optimize's abusive use of its subpoena power and morphing follow-up requests under the threat of a motion to compel drives Adobe for relief from this Court. Under the Federal Rules, Optimize is not entitled to continue to harass third-party Adobe indefinitely in search of 1) any documents that somehow relate to the Recommendations products, 2) any documents that concern monitoring metrics for industry players, like the Defendants, 3) data that is not reasonably accessible, or 4) source code of non-accused products. *See* Fed. R. Civ. Proc. 26(c)(1). Adobe produced the pertinent documentation and even a complete set of the source code for Recommendations, and requests that the Court grant a protective order against further discovery requests from Optimize relating to its pending litigation.

Adobe also moves to quash the remaining Optimize document requests. For each document request, Optimize uses the broadest possible language violating the Federal Rules, which call for document requests to be narrowly-tailored against a third-party. *Medtronic MiniMed*, 2014 WL 308952, *2; *see also* Fed. R. Civ. Proc. 45(c)(3)(A)(i), (iv). Importantly, each document request seeks documentation relating to each of the *five* Defendants and any of their respective accused

---

[7] In its most recent correspondence, Optimize asserts that "these metrics enter into damages calculations because they show both the effectiveness of the web sites before and after recommendations, as well as the specific clicks, views and other sales-related data measured related to both recommended sales during the relevant time period and the non-recommendations-related sales during the relevant time period." Chanin Ex. J. Optimize also is now apparently willing to consider limiting the scope of its claim, stating "[a]t a minimum, we need the metrics data we have requested that is available that relates to HSN, and data for Staples' sales that are attributed to recommendations from 2009 to the present." *Id.* But as Adobe has explained only REI is a customer of the Recommendations product. And to the extent that Optimize's claim of relevance is tied to non-Recommendations products, it is unreasonably burdensome to require Adobe to gather all of its sales data for the defendants in the underlying litigation just because they may be (or previously have been) customers of Adobe or its predecessors.

services, functionality, and/or products in the litigation as a whole. *See* Subpoena at "Definitions" for "Services", "Defendants", "recommended products functionality", and "accused websites". As explained, it is undisputed the Adobe only supplies the Recommendations software to one defendant REI, not to any of the other defendants for use on their respective websites. For example, in its document requests to third-party Adobe, Optimize seeks:

1. All documents relating to negotiations or contracts with any of the Defendants. (*See, e.g.*, Request Nos. 1-4).

2. All documents relating to the technology employed by any of the Defendants. (*See, e.g.*, Request Nos. 5, 7, 8).

3. All source code and software relating to any of the Defendants' technology in the case. (*See, e.g.*, Request Nos. 11, 12).

4. All data resulting from any monitoring and tracking of the Defendants' websites. (*See, e.g.*, Request No. 18).

5. All promotional or marketing documents provided to any Defendant. (*See, e.g.*, Request Nos. 24, 25).

6. All documents relating to market demand for any of the Defendants' accused services. (*See, e.g.*, Request No. 27).

7. All documents relating to the surveys, tests, analysis related to the benefits or costs of using the services provided by the Defendants. (*See, e.g.*, Request No. 29).

8. All documents relating to any market or third party study or report relating to performance of any defendant's accused functionality. (*See, e.g.*, Request No. 31).

With its overly broad "Definitions" and overly broad language within the each request, Optimize fails as a matter to law to provide requests narrowly tailored for third-party discovery on Adobe, and should be quashed. *Medtronic MiniMed*, 2014 WL 308952, *2; *see also* Fed. R. Civ. Proc. 45(c)(3)(A)(i), (iv).

**B.     The Court Should Quash And/Or Issue a Protective Order Against Optimize's Deposition Subpoena**

Adobe moves to quash and moves for a protective order against Optimize's broad requests for a deposition. For months, both for documents and deposition requests, Optimize has shown its uncompromising nature and abusive discovery tactics forcing Adobe to spent considerable resources in response to Optimize's unreasonable positions and burdensome requests. Adobe moves for relief from this Court to avoid further undue burden from a litigant who continues to abuse its subpoena power.

**1.     Optimize's Subpoena Fails to Comply with the Procedural Requirements of Federal Rule of Civil Procedure 45(a)**

As an initial matter, the Court should quash Optimize's Deposition Subpoena because it fails to comply with the requirements of Federal Rule of Civil Procedure 45(a). Optimize issued its deposition subpoena out of the wrong Court, as the subpoena issued <u>after</u> the December 1, 2013 rule change requiring that "[a] subpoena must issue from the court where the action is pending." Fed. R. Civ. Proc. 45(a)(2); *Medtronic MiniMed*, 2014 WL 308952, at *1 (recognizing the rule change). The Deposition Subpoena in this case should have been issued from the Eastern District of Texas, but instead Optimize issued it from the Northern District of California. Accordingly, the Deposition Subpoena is invalid and must be quashed. *Zamani v. Carnes*, C03-00852, 2008 WL 2127849, at *1 (N.D. Cal. May 19, 2008) ("a subpoena that designates the wrong issuing court is void"). Even though this Court is not the proper venue for issuance, this Court is the proper venue for quashing the subpoena because subpoenas must be challenged before the court where compliance is required. *See* Fed. R. Civ. Proc. 45(c)(3)(A) ("On timely motion, the court for the district where *compliance is required* must quash or modify a subpoena . . . ."). The compliance of the 30(b)(6) deposition occurs in the Northern District of California, which is Adobe's principal place of business.

**2.     The Court Should Quash Optimize's Overly Broad Subpoena In Its Entirety**

Each and every deposition topic in Optimize's deposition subpoena uses the broadest possible language for topics, and therefore should be quashed as a matter of law. *Medtronic*

- 17 -
NON-PARTY ADOBE'S MOTION TO QUASH AND FOR A PROTECTIVE ORDER WITH RESPECT TO OPTIMIZE'S DOCUMENT AND DEPOSITION SUBPOENAS

*MiniMed*, 2014 WL 308952, *4 (quashing numerous deposition topics within third party subpoena as overly broad and/or irrelevant to the underlying action). Courts require parties to craft the topics within deposition subpoenas with "painstaking specificity" so that the third-party can understand which a corporate witness to designate and on what issues:

> In order for Rule 30(b)(6) to function effectively, the requesting party must take care to designate, **with painstaking specificity**, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute. . . .

*Lipari v. U.S. Bancorp, N.A.*, No. 07-2146-CM-DJW, 2008 WL 4642618, at *5 (D. Kan. Oct. 16, 2008) (citations and quotations omitted) (emphasis added); *see also Apple Inc. v. Samsung Electronics Co., Ltd.*, No. C 11-1846, 2012 WL1511901, at *2 -*3 (N.D. Cal. Jan. 27, 2012) (granting motion for a protective order with respect to a party subpoena in light of the parties' inability to negotiate such a reasonable starting point); *Stacy v. H&R Block Tax Servs., Inc.*, No. 07-CV-13327, 2011 WL 807563, at *2 (E.D. Mich. Mar. 2, 2011) (relieving party of any obligation to comply with "overbroad" 30(b)(6) notice).

Optimize did not notice a handful of narrowly tailored topics directed specifically at the technology underlying the Adobe Recommendations product supplied to defendant REI. Rather, Optimize subpoenaed Abode with 43 topics, plus subtopics bringing the total number of topics to 53, broadly-worded in an effort to address all issues surrounding contact negotiations, monitoring metrics for industry players, marketing, testing, R & D, projected usage, third-party investigations, promotional materials, business plans, revenues, knowledge of the patents, among many other general topics. Chanin Decl. Ex. K. Optimize's requests are improper as a matter of law and should be quashed. *Medtronic MiniMed, Inc.*, 2014 WL 308952, *4; *Lipari*, 2008 WL 4642618, at *5.

### 3. Adobe Alternatively Seeks a Protective Order to Limit the Deposition Topics To the Technical Issues Relating to How the "Recommendations" Product Functions

To the extent the Court finds the deposition subpoena valid, Adobe seeks a protective order limiting the deposition topics to three specific technical topics identified by Optimize in meet and confer correspondence concerning the operation of Adobe's proprietary Recommendations

software, specifically a) code that intakes product data for REI, b) code that creates the models used to provide product Recommendations, and c) code that delivers the product Recommendations. Chanin Decl. Exs. O & P.

Adobe moves to quash or moves for a protective order against the "damages" topics that Optimize seeks for Topics 21, 23-34, and 36-42, namely a) performance data for the Recommendations product, b) the inaccurate reporting of any performance data, c) the utilization and/or effectiveness of product Recommendations that are monitored, d) the effects of product Recommendations on websites, and e) marketing of its product recommendations product. Chanin Decl. Ex. O. To the extent this information is even relevant to its damages case, Optimize can and should seek this information from Defendant REI. Optimize should undertake discovery and work with Defendant REI to obtain this information.[8] *See, e.g., Rocky Mountain Medical*, 2013 WL 6446704, at *4 ("A court may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation.") (collecting cases). To the extent these topics seek information about Adobe's internal marketing strategy or performance data, such information is not relevant to any claim or defense as Adobe is not even a party to this action.

Optimize unreasonably demands testimony concerning non-Adobe, non-Recommendations products that should be quashed. Optimize seeks testimony on an unspecified "Omniture reporting product, which all of the named defendants still in the suit (REI, Dillard's, JCPenney, Staples and HSN) use". In short, Optimize seeks Adobe testimony on the performance metrics of the defendants' non-Adobe software used for offering product recommendations on their respective websites. Optimize figures that because Adobe's markets a metrics tool to the industry as a whole, Adobe as a company may have performance data for the industry, including for the defendants' own software for its website product recommendations. Optimize's requests are wholly unreasonable, and it should seek such information from the Defendants and not unduly burden third-party Adobe. *See Medtronic MiniMed*, 2014 WL 308952, *2 (quashing subpoena requests "competitive intelligence documents" as unduly burdensome for a third party).

---

[8] Optimize also seeks testimony on the contractual relationship between Adobe and REI. Chanin Decl. Ex. O. To the extent this is relevant, Optimize should also seek testimony from defendant REI on these topics.

- 19 -
NON-PARTY ADOBE'S MOTION TO QUASH AND FOR A PROTECTIVE ORDER WITH RESPECT TO OPTIMIZE'S DOCUMENT AND DEPOSITION SUBPOENAS

In sum, to the extent its subpoena is even valid, Adobe requests a protective order limiting the deposition topics to the three technical topics outlined above concerning the Adobe Recommendations software supplied to REI.

## IV. Adobe Is Entitled To Monetary Sanctions In Light Of Optimize's Abusive Use Of Subpoena Power

Optimize's tactics have wasted a significant amount of time and resources for Adobe, and consequently, Adobe asks for monetary sanctions to compensate for the attorney's fees and costs incurred in connection with this motion. *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir. 2003) (upholding the imposition of sanctions on a party serving an overly broad subpoena). Despite the significant efforts made by Adobe to try to negotiate with Optimize on its subpoena requests, Optimize has been uncompromising in its quest for materials. With its morphing follow-up requests, Optimize continues to harass Adobe for a) information not reasonably accessible, b) source code on non-accused products, c) duplicative information it has or can receive from other parties in this action, and d) monitoring metrics for all Defendants regardless of the accused product. Optimize's uncompromising positions and follow-up requests seeking additional, never-ending sets of new materials has inflicted an undue burden on Adobe and provides the motivation for this motion. In these circumstances, Adobe should be reimbursed for its attorney's fees and costs in bringing the instant motion. *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 09-CV-01967, 2012 WL 629225, *8 (N.D. Cal. Feb. 27, 2012) (granting monetary sanctions when party failed to act reasonably during third-party discovery).

///

///

///

///

///

///

///

///

## V. CONCLUSION

For the foregoing reasons, Adobe respectfully requests that the Court quash further discovery requests from Optimize related to its pending litigation and moves for a protective order against the same.

Dated: March 25, 2014

**ARNOLD & PORTER LLP**
MICHAEL A. BERTA
RYAN J. CASAMIQUELA
RACHEL L. CHANIN

By: _____
Ryan J. Casamiquela
*Attorneys for Non-Party Adobe Systems, Inc.*

- 21 -
NON-PARTY ADOBE'S MOTION TO QUASH AND FOR A PROTECTIVE ORDER WITH RESPECT TO OPTIMIZE'S DOCUMENT AND DEPOSITION SUBPOENAS